OPINION
The Franklin County Court of Common Pleas, Division of Domestic Relations, determined that, during a specific twenty-four-month period, plaintiff-appellant, Mark A. Smith, accrued $98.87 per month in child support arrearages. Appellant appeals, asserting that the trial court should have calculated his child support arrearages by applying the child support guidelines as per the agreement between appellant and his ex-wife, Mary D. Smith, nka Mary Dunning, defendant-appellee. Because the trial court did not apply the child support guidelines as the parties agreed, we sustain appellant's assignments of error. Accordingly, we reverse the judgment of the trial court and remand this case for a recalculation of appellant's arrearages in accordance with the child support guidelines.
The parties divorced in 1991, and, at that time, had five minor children who lived with appellee and for whom appellant paid support. As the three elder children became emancipated and, as the parties' incomes changed, they asked the court to modify the support order several times.
In March 1994, the parties filed an agreed judgment entry, and the court adopted the agreed entry as an order. Pursuant to the agreed entry, appellee was designated the residential parent of the parties' youngest child, Bethany. Appellant agreed to pay $248.83 per month for support of Bethany, the amount recommended by the child support guidelines for imputed incomes of $27,000 for appellee and $20,000 for appellant. The agreed entry also provided that, on August 15, 1994, the parties' second youngest child, Michelle, would express her residence preference and that the child support would be set for Michelle after she expressed her preference.
On August 15, 1994, Michelle expressed her preference to live with appellee. At that time, the parties agreed that they would use the child support guidelines to determine the child support. Thus, they agreed that appellant would pay a total of approximately $350 per month, because the child support guidelines dictated that amount when appellee was the residential parent for both children. The parties never filed an agreed entry to modify support with the court and, thus, the child support order in the record ordered appellant to pay $248.83 for Bethany, but did not order any support for Michelle.
While Bethany and Michelle both lived with appellee, appellant paid $345 per month in child support, an amount close to the $347.70 dictated by the child support guidelines. Appellee accepted the money and did not seek modification from the court. Based on these actions, the trial court later found that the parties made an enforceable agreement to set the child support amount for both Bethany and Michelle in accordance with the child support guidelines.
In June 1995, Michelle elected to reside with appellant instead of with appellee. When Michelle began living with appellant, he stopped paying child support. Appellant believed that he was no longer obligated to pay child support, because he and appellee each had one child at their residence. Moreover, appellant believed that he was entitled to receive child support from appellee on Michelle's behalf, because appellee had a higher income than he did and, therefore, she had a larger per-child support obligation. Michelle continued to live with appellant until she became emancipated in June 1997, but appellee did not pay appellant any child support.
On March 2, 1998, appellant filed a motion to establish arrearages for the support of Bethany and Michelle. Appellant requested that the court find he owed no arrearages and filed a motion to establish retroactive support for Michelle. At the subsequent magistrate's hearing, appellant appeared pro se and appellee failed to appear.
The magistrate found that appellant owed appellee $248.83 per month for Bethany's support during the months that Michelle lived with appellant. The child support guidelines recommend, based on appellant's income of $20,000, a monthly obligation of $248.83 for one child. The magistrate also determined that appellant was entitled to offset his support obligation during the months that Michelle lived with him pursuant to R.C. 3113.215(C). The magistrate calculated Michelle's credit by subtracting appellant's obligation for Bethany alone ($248.83) from his obligation for Bethany and Michelle together ($347.70). Thus, the magistrate found that appellant's obligation was reduced from $347.70 to $98.87 for each of the twenty-four months that Michelle lived with him. The magistrate also found that appellant owed additional arrearages for the time period after Michelle was emancipated and, therefore, granted appellant's motion to modify future child support based upon his decreased income.
Appellant filed objections to the magistrate's recommendation. The trial court adopted the magistrate's recommendation in its entirety.
Appellant filed a timely notice of appeal. On appeal, appellant does not challenge the trial court's decision regarding his child support obligation after Michelle became emancipated. In challenging the court's determination regarding his child support obligation during the twenty-four months that Michelle lived with him, he asserts the following assignments of error:
ASSIGNMENT OF ERROR NUMBER 1
 The Court of Common Pleas erred when it held that the monthly Child Support obligation was the same for either myself or Ms. Dunning, when we had different annual incomes.
ASSIGNMENT OF ERROR NUMBER 2
 The Court of Common Pleas erred when it assumed a higher Child Support amount for Bethany Smith than for Michelle Smith when the two children lived in separate households in a split parenting arrangement.
ASSIGNMENT OF ERROR NUMBER 3
 The Court of Common Pleas erred when it established a Child Support offset from Ms. Dunning, the higher income parent, and yet assumed that I, the lower income parent, continued to pay during the offset period.
Each of appellant's assignments of error challenge the trial court's determination that he owed appellee a child support payment of $98.87 per month during the months that Michelle lived with him.
The trial court found that, after Michelle chose to reside with appellee, the parties agreed to use the child support guidelines to determine the amount of child support and agreed that the child support guidelines recommended that appellant pay appellee approximately $350 per month. The trial court further held that, though the parties never filed that child support agreement with the court, the court would uphold and enforce it.
The trial court stated its finding regarding the parties' agreement by referring both to the amount, approximately $350, and to the method of setting that amount, following the child support guidelines. The trial court did not state a clear finding regarding which of these embodies the parties' agreement. However, in applying the agreement, the trial court used the exact amount recommended by the child support guidelines for sole residential parenting, being $347.70, rather than $350. Moreover, the trial court altered the $347.70 figure by looking to the child support guidelines to determine Bethany's support. Additionally, the trial court found that the parties' agreement was in the best interests of the children. Because the agreement likewise recognized that Michelle could choose to live with either parent, and because the child support guidelines call for a larger overall amount of support when the children live in separate residences, an agreement fixing child support at $350 from appellant per month, regardless of Michelle's residence, would not support the best interests of the children.
Where the record is unclear, we presume regularity in the proceedings below. See Hartt v. Munobe (1993), 67 Ohio St.3d 3,7. Thus, we presume that the trial court found that the parties agreed to determine their respective child support obligations by applying the child support guidelines. Evidence in the record supports this finding, including appellant's testimony that the guidelines were part of their agreement and the fact that the parties anticipated Michelle changing her residence. Additionally, an agreement based upon the child support guidelines supports the best interests of the children, while strict adherence to a $350 figure does not. Therefore, we find that the trial court correctly found that the parties had an enforceable agreement to set child support according to the child support guidelines.
We next must determine whether the trial court applied the child support guidelines correctly when it determined appellant's child support obligation during the relevant twenty-four-month period.
In a split parenting agreement, the parties have more than one minor child and each parent is the residential parent of at least one of those children. R.C. 3113.215 (A)(8). The child support guidelines specify that, to determine a parent's support obligation under a split parenting arrangement, the court must look to the parents' total income and the number of children in each residential parent's household. R.C. 3113.215(F)(17). During the relevant twenty-four-month period in this case, the parties' total income was $47,000 per year, with appellant earning $20,000 and appellee earning $27,000. Each was a residential parent for one child. Thus, pursuant to R.C. 3113.215(F)(17), to determine the parties' combined child support obligation for each child in this case, the court should have located the number on the R.C. 3113.215(D) chart where the amount, $47,000, intersects with the number of children at the residence, one. The guidelines then call for each parent to contribute a percentage, calculated based upon the parents' relative incomes, of the combined support obligation.
Likewise, in a shared-parenting arrangement, where only one parent is a residential parent, the court must look to the parties' combined income and the number of children in the residential parent's household to determine the non-residential parent's child support obligation. R.C. 3113.215(E)(17). When both Bethany and Michelle lived with appellee, the parties' total support obligation could have been located at the point where the income amount, $47,000, intersects with the number of children in the residence, two.
The child support guidelines recognize that raising two children together is less expensive than raising them apart. Thus, for an income of $47,000, the guidelines recommend a combined support obligation of over $7,000 per year for one child per residence, but an obligation of less than $10,200 for two children in one residence. When the guidelines for split parenting are applied, the combined obligation for Bethany, the first child in appellee's household, is approximately $7,000. Likewise, the combined obligation for Michelle, the first child in appellant's household, is approximately $7,000. Thus, the parties' obligation for both children totals about $14,000 under the guidelines for a split-parenting arrangement. In contrast, when the guidelines for shared parenting are applied, the combined obligation for Bethany and Michelle living in one residence totals less than $10,200.
The trial court found that appellant owed a monthly contribution of approximately $350 when the combined annual obligation of the parties totaled approximately $10,200 and appellee was the sole residential parent. When appellant became Michelle's residential parent, the trial court retained the figures of approximately $350 (and, hence, $10,200), instead of increasing the parties' combined annual obligation to approximately $14,000, as recommended for split-parenting arrangements.
Additionally, instead of splitting the benefit of the combined obligation equally between Bethany and Michelle, the trial court divided the $10,200 by designating Bethany as the first child in a sole residential parent arrangement, and Michelle as the second child in a sole residential parent arrangement. Thus, it determined that the parties' combined obligation to Bethany was approximately $7,000, while their obligation to Michelle equaled the difference between approximately $10,200 and $7,000, only $3,200.
Moreover, the trial court effectively ordered appellant to shoulder the parties' entire combined support obligation for Michelle. Specifically, the trial court ordered appellant to assist appellee by paying his percentage of the parties' combined obligation for Bethany, but the court did not require appellee to assist appellant by paying her percentage of the parties' combined obligation for Michelle.
In sum, we find that the trial court erred as a matter of law when it failed to correctly apply the child support guidelines to the split-parenting arrangement between the parties. Therefore, we remand this case to the trial court to apply the child support guidelines for split-parenting arrangements to determine the obligations of each party during the twenty-four-month period that Michelle resided with appellant. To the extent that the trial court determined arrearages outside the twenty-four-month period, we do not disturb the trial court's judgment, except to credit appellant with any arrearage amount that appellee owes to him for the twenty-four-month period. Finally, we do not disturb the trial court's judgment with regard to modified future support.
Accordingly, appellant's assignments of error are sustained. The judgment of the trial court is reversed in part and affirmed in part, and this case is remanded to the trial court for further proceedings consistent with this opinion.
BOWMAN, P.J., and KENNEDY, J., concur.
KLINE, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.